## GRISHAM MERCANTILE & LUMBER COMPANY, Appellant v. HERMAN RABICH et al., Respondents.

### St. Louis Court of Appeals, May 15, 1900.

Contract, Construction of: PAROL TESTIMONY. Where a written contract is plain and easily understood, and is not ambiguous or uncertain or unintelligible in its terms, it is not such a contract as may be explained or qualified by parol testimony.

Appeal from the Cape Girardeau Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED.

*John A. Hope* with *Johnson, Houls, Marlatt & Hawes* for appellant.

(1) Rabich's agreement to remit for all sales at the end of each week, at the invoice price, is plain and unequivocal, and it was error to allow the introduction of extrinsic evidence to vary or modify this agreement. City of Cincinnati v. Gas Co., 41 N. E. Rep. 239; St. Louis Gas Light Co. v. City of St. Louis, 46 Mo. 121; Pearson v. Carson, 69 Mo. 550; Hair Co. v. Walmsley, 32 Mo. App. 118; George v. Dean, 17 Mo. App. 332; Trissell v. Mayer, 13 Mo. App. 331. (2) Evidence of the opinions, the "understandings" and "impressions" of the parties and other witnesses received by the referee was wholly inadmissible under any view of the contract. Nelson Mfg. Co. v. Mitchell, 38 Mo. App. 330; State v. Gritzer, 134 Mo. 525; State v. Miller, 44 Mo. App. 165; Phares v. Barber, 61 Ill. 275. (3) Where parties have reduced their contract to writing it is conclusively presumed in the absence of accident, fraud or mistake, that the whole engagement and the manner of its performance are embraced in the writing and all anterior and contemporaneous stipulations and representations are merged in the written instrument. Gooch v. Connor, 8 Mo. 391; State ex rel. v. Horshaw, 98 Mo. 358; Tracy v. Iron Works Co., 104 Mo. 193; Lindell Hotel Co. v. Bailey, 3 Mo. App. 598.

*W. H. Miller* for respondents.

(1) The contract in question has been construed by the parties themselves, and this should govern over all other constructions. Beach on Modern Contracts, upon this point uses the following language: "If the words or terms of a contract are equivocal, resort may be had to the circum-

stances under which the contract was executed and the contemporaneous construction given to the contract by the parties. * * * It is a familiar doctrine that when the terms of a contract or agreement are in any respect doubtful or uncertain, and the parties to it have placed a construction upon it which is reasonable, such construction may be adopted by the courts because it is the duty of the court to give effect to the intention of the parties, where it is not wholly at variance with the correct legal interpretation of the terms of the contract. We think that the particular construction of a contract placed upon it by the parties themselves must obtain over the literal meaning of the contract as expressed in its equivocal terms." Beach on Contracts, secs. 721 and 722. At section 723 he says: "The great object and indeed the only foundation of all of the rules of contracts is to come at the intention of the parties, and a particular construction placed upon it by the parties who made it should govern." At section 724 he says: "That a party to a contract is estopped from denying the construction which he himself placed on it at the time of its execution." At section 725 it is said: "Parol evidence is admissible to show the contemporaneous understanding of the parties to a written contract, etc." It is said in the case of Sedalia Brewing Company v. Sedalia Water Works Company, 34 Mo. App., page 49—syllabus: "The contract between the parties hereto require the defendant on certain conditions to furnish the plaintiff water for actual brewing purposes alone, and the accounting and settlement between the parties for nearly three years proceeded on the basis that said provision did not simply mean the water actually used in the beer brewed, but that it included all of the water used properly connected with brewing beer."

BLAND, P. J.—Appellant was engaged in the manufacture of lumber at Lowndes, Wayne county, Missouri, and in November, 1896, had a lumber yard at the city of Cape Girardeau in charge of Lawrence Layton as its agent. On the tenth of November, Layton gave up his agency and appellant entered into the following contract with Herman Rabich for the purpose of providing for the sale of its lumber at Cape Girardeau, to-wit:

"Articles of agreement made and entered into this tenth day of November, 1896, between the Grisham Mercantile and Lumber Company, of Lowndes, in the State of Missouri, of the one part, and Herman Rabich, of Cape Girardeau in the State of Missouri, of the other part, as follows:

"The said Grisham Mercantile and Lumber Company hereby agrees to turn over to Herman Rabich all lumber, laths, shingles and molding now in stock and located in lot 53, range II in the city of Cape Girardeau, Missouri, at invoice price and deliver to said Herman Rabich, at market price, lumber, laths, shingles and molding at such time as he may want and need it, said stock of lumber, laths, shingles and molding to remain in the possession of the said Grisham Mercantile and Lumber Company, and they reserve the right to remove said lumber, laths, shingles and molding from said lot 53, range H to any other place in the city of Cape Girardeau; said Grisham Mercantile and Lumber Company agree to furnish said stock of lumber, laths, shingles, and molding to said Rabich as he may want or need it at the market price, and deliver the same at the railroad depot in the city of Cape Girardeau, Missouri, said Herman Rabich to unload and take the same to the yard at his expense and keep the same in good condition and well stacked. The said Herman Rabich to make a statement of all sales of lumber, laths, shingles and molding at the

end of each week and remit for said sales at that time at the invoice price thereof.

"It is mutually agreed that every six months an inventory of stock be taken and a complete statement of affairs be made.

"In order to fence said lot and keep the shed in good repair the Grisham Lumber and Mercantile Company agree to furnish all lumber and material for the same and the said Rabich to do the work free of charge, the rent of said lot to be paid by the Grisham Mercantile Lumber Company.

"It is further mutually agreed by both parties that, if either party wishes to terminate this agreement, he shall give sixty days notice in writing to the other party, and should the said Herman Rabich fail to remit for the sale of said lumber, laths, shingles and molding at the time specified herein, the said Grisham Mercantile and Lumber Company can not be held liable to said Herman Rabich in failing and refusing to deliver any more stock on his demand. In witness whereof the said Grisham Mercantile and Lumber Company has caused this agreement to be signed in its corporate name by its president and attested by its secretary and the corporate seal thereof attached, and the said Herman Rabich has subscribed his name thereto the day and year first above written.

"Grisham Mercantile and Lumber Company (Seal).

"Attest:                    James Grisham, President.

"T. M. Grisham, Secretary,

"Herman Rabich."

And at the same time took from Rabich the following bond:

"Know all men by these presents that Herman Rabich, Henry Rabich and Bernard Gockel of the county of Cape Girardeau and state of Missouri, are held and firmly bound

to the Grisham Mercantile and Lumber Company of Lowndes, Missouri, in the sum of three thousand dollars to be paid to the Grisham Mercantile and Lumber Company, or its assigns, to the payment whereof we bind ourselves, our heirs, executors and administrators, firmly by these presents.

"Sealed with our seals and dated the tenth day of November, 1896. The condition of this obligation is that: Whereas, the Grisham Mercantile and Lumber Company and Herman Rabich have this day entered into an agreement for the sale of said company's lumber, laths, shingles and molding. Now, if the said Herman Rabich shall pay over all moneys due said company on account of the delivery of said lumber, laths, shingles and molding, and turn over all stock on hand and unsold at the expiration of their said agreement, then this bond to be void, otherwise to remain in full force and effect.

"Herman Rabich (Seal)

"Henry Rabich (Seal)

"Bernard Gockel (Seal)."

Rabich took charge of appellant's lumber yard under the contract and continued in charge selling lumber, until July, 1897, when he gave notice to appellant of his intention to give up the business. After receiving this notice Mr. Lin. Grisham, vice-president of appellant, proceeded to Cape Girardeau and according to his testimony had a settlement with Rabich; that the invoices showed that the company had furnished Rabich $5,521.05 worth of lumber at the agreed price, and that the balance due the company, after deducting cash paid and lumber on hand at settlement, was $1,942.52, which amount he testified Rabich promised to deposit in bank to the credit of the company within ten days. Rabich failed to pay the alleged balance, and this suit was brought on his bond for its recovery.

The answer was first a general denial, and second an affirmative defense that Rabich sold the lumber on commission, as per agreement between himself and the company, and that he had accounted to the company for all the lumber he had sold, by paying the cash for what he had sold for cash, and by accounts for what he had sold on credit, and denied that he was a guarantor for credit sales. The issues as made by the pleadings were sent to a referee. On the hearing before the referee parol evidence was admitted, over the objection of the appellant, for the purpose of explaining the contract, and as to the understanding and agreement of the parties when the contract was made, the referee ruling that the contract as written was so indefinite and uncertain as to be incomprehensible, and that parol testimony was necessary to elucidate the understanding between the parties thereto. Evidence was heard touching the amount of lumber received by Rabich and its market value; the quantity on hand at the time of settlement; the amount of cash and credit sales. That sold for cash, Rabich paid cash for; that sold on credit, he did not pay for, nor did the appellant accept the accounts from Rabich for what he had sold on credit, or allow him any credit therefor. The referee found that Rabich was the mere agent of appellant, and that as such agent it was competent for him to sell for cash or on credit, being responsible for negligence only, and that the parties so understood the contract when they entered into it; found that Rabich had not been guilty of negligence in making credit sales, and that he had accounted for all the lumber he had sold, and paid for all he had sold for cash, and found the issues for them. Appellant moved to set aside the report. The court overruled the motion, approved the report and entered judgment on the report for defendants. After an unsuccessful motion for new trial the Grisham Mercantile and Lumber Company appealed.

1. We are unable to agree with the learned referee that the contract is so indefinite or uncertain as to be unintelligible, or that it is such a contract as may be explained or qualified by parol testimony. The contract is plain enough and easily understood. We discover nothing ambiguous, uncertain or unintelligible in its terms. It provides that the Grisham Mercantile and Lumber Company should turn over to Rabich the lumber then on hand in its yard at Cape Girardeau at its market price; that on Rabich's orders it would in the future deliver on board the cars at Cape Girardeau other lumber at its market price; that it would pay yard rent; that the lumber delivered and to be delivered should remain in the possession of the company (that is should remain its property). On his part Rabich agreed to take charge of the lumber then in the yard and to receive future deliveries on his orders on board of cars at Cape Girardeau. He agreed to sell the lumber or so much of it as he could find sale for, at any price he chose, and at the end of each week to make a report of all lumber sold during the week, and to remit the invoice price thereof to the company. He was the mercantile agent of the company to sell the products of its mills, not on commission, but on his own account. If he sold above cost price, the profit was his; if he sold below, he was bound to stand the loss; but whether he sold for a profit, or at a loss for cash or on credit, he was bound under the terms of his contract, to report the sale and remit the invoice price at the end of the week. Sales made by him, were his sales, not the sales of the company. If credit was given, it was at his risk, not the risk of the company. In legal effect when he made a sale, he by the transaction became a purchaser of the lumber himself from the company at its invoice price, to be remitted at the end of the week of the sale. He confessedly failed and refused to make these remittances, wherefore

we reverse the judgment and remand the cause for new trial in accordance with the views herein expressed.

Judge *Bond* concurs; Judge *Biggs* absent.